[Cite as *State v. Shaffer*, 2018-Ohio-205.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

RANDY D. SHAFFER II

    Appellant

C.A. No.    17AP0001

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2016 CRC-1 000263

DECISION AND JOURNAL ENTRY

Dated: January 22, 2018

TEODOSIO, Judge.

**{¶1}** Appellant, Randy Shaffer II, appeals from his conviction for illegal assembly or possession of chemicals for the manufacture of drugs in the Wayne County Court of Common Pleas. We affirm.

I.

**{¶2}** In June of 2016, an investigation into multiple, recent pseudoephedrine purchases by C.T. and L.D. prompted authorities to procure a search warrant for the individuals' residence on Sherwood Drive in Wooster. On June 25, 2016, the Wayne County Sheriff's Office executed the search warrant at the suspected methamphetamine lab and discovered an abundance of items related to the manufacture of methamphetamine. Four individuals were also inside of the residence, including Mr. Shaffer.

**{¶3}** Mr. Shaffer was charged with illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree. After a bench trial, Mr. Shaffer was found guilty of the offense and the trial court sentenced him to three years in prison.

**{¶4}** Mr. Shaffer now appeals from his conviction and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

SHAFFER'S CONVICTION FOR ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶5}** In his sole assignment of error, Mr. Shaffer argues that his conviction is based on insufficient evidence. We disagree.

**{¶6}** "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶7}** Mr. Shaffer was convicted of illegal use or possession of chemicals for the manufacture of drugs under R.C. 2925.041(A), which provides: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II * * *." Moreover, "[t]he assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section." R.C. 2925.041(B). "Methamphetamine is classified as a Schedule II controlled substance and a stimulant under R.C. 3719.41, Schedule II (C)(2)." *State v. Yoakem*, 9th Dist. Wayne No. 14AP0016, 2016-Ohio-745, ¶ 7. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

**{¶8}** Mr. Shaffer argues his conviction is based on insufficient evidence because no evidence was presented that, on June 25, 2016, he assembled or possessed any of the methamphetamine-related supplies discovered at the residence or that he provided any of the supplies to C.T. for the manufacture of methamphetamine. He further argues that no evidence was presented to link his purchase of pseudoephedrine on June 24, 2016, to the pseudoephedrine that was discovered in the residence on June 25, 2016. Therefore, he argues that his case is analogous to *State v. Morlock*, 9th Dist. Summit Nos. 26954, 26955, & 26956, 2014-Ohio-4458.

{¶9}  In a split decision[1], this Court reversed convictions for illegal manufacture of drugs and illegal assembly or possession of chemicals for the manufacture of drugs due to insufficient evidence in *Morlock*. *Id.* at ¶ 28.  The testimony presented at trial showed that Mr. Morlock had not brought any such chemicals with him to the residence on October 28, 2012, for manufacturing methamphetamine, and that the last time he brought such chemicals to the residence was two weeks prior to October 28, 2012. *Id.* at ¶ 26.  Although there was testimony that Mr. Morlock had brought supplies over for the manufacture of methamphetamine five or six times in the prior month, no evidence was presented that the particular chemicals found at the residence on October 28, 2012, were ever assembled or possessed by Mr. Morlock. *Id.* at ¶ 27. Accordingly, this Court concluded "[t]here was no evidence that, *on or about October 28, 2012*, Mr. Morlock possessed any chemicals or supplied any chemicals to make methamphetamine to * * * anyone at 92 Willard." (Emphasis added.) *Id.* at ¶ 26.

{¶10}  At trial in the case sub judice, the State presented the testimony of two witnesses. Jason Waddell, the senior agent in the Medway Drug Enforcement Agency, testified that on June 25, 2016, Sergeant Joe Copenhaver of the Wayne County Sheriff's Department called him to request his services in dismantling a clandestine methamphetamine lab at 636 Sherwood Drive in Wooster.  Agent Waddell testified that he discovered many items in the residence that were

---

[1] The dissent stated that evidence was presented that Mr. Morlock "would routinely provide various ingredients necessary for the production of methamphetamine in exchange for some of the finished product." *Morlock* at ¶ 32 (Carr, J., dissenting).  Mr. Morlock would drop off some ingredients and then return to the residence merely hours later to use his share of the newly manufactured methamphetamine. *Id.*  On October 28, 2012, Mr. Morlock and three others were arrested inside of the residence while preparing to use four lines of methamphetamine that were laid out on a speaker before them. *Id.*  Therefore, the dissent concluded that a reasonable inference could be drawn that Mr. Morlock had provided ingredients on or about October 28, 2012, for the most recently manufactured batch of methamphetamine and had returned hours later to use his share of the drugs when he was arrested. *Id.*

related to the manufacture of methamphetamine. Inside of a closet, he discovered ice packs that had been cut open with some of the ammonium nitrate removed. In a bedroom, he discovered approximately thirty syringes and a burnt spoon with residue and a cotton swab on top. Inside of a "lazy Susan" in the kitchen, he discovered a half-gallon bottle of muriatic acid, measuring cups, and several funnels. One of the funnels had a white powder residue on it that was tested on litmus paper at the scene and came back as a "strong base," which Agent Waddell testified is "indicative of what we see when a funnel would be used to add sodium hydroxide, a crystal drain cleaner type." On a small table in the kitchen, he discovered several cans of lighter fluid and a can of acetone. In an upper kitchen cabinet, he discovered an orange and clear plastic spice grinder with a white powder in it. The white powder tested negative for methamphetamine, but Agent Waddell testified that these types of grinders are commonly used to grind up pseudoephedrine pills in methamphetamine labs. Inside of the kitchen trash can, he discovered another can of lighter fluid, an empty 40-count box of pseudoephedrine, and a lithium battery that had been cut open with the lithium removed. Inside of two trash cans the basement, he discovered another empty can of lighter fluid, several one-liter plastic bottles containing some water, a gallon-size Ziploc bag containing empty pseudoephedrine packs, and empty ice pack, and a lithium battery that had been cut open with the lithium removed.

{¶11} Agent Waddell testified that while he took a break outside of the residence, some Sheriff's deputies discovered two sealed buckets in the basement of the residence. They opened one up and observed kitty litter inside. Agent Waddell testified that kitty litter is used as an odor-absorbing layer in the manufacture of methamphetamine. He went back into the basement to further inspect the buckets and he found several sealed plastic bottles containing an off-white

or off-pink sludge with a black chunk of material inside, which he testified is indicative of a one-pot methamphetamine lab.

{¶12} Wayne County Sheriff's Deputy Paul Gramlich testified that he obtained a search warrant for 636 Sherwood Drive to look for items involved in the manufacture of methamphetamine and other drug-related items. He also participated in the execution of that search warrant as a perimeter unit while the Special Weapons and Tactics ("SWAT") team entered the residence. Four individuals were located inside of the residence when the search warrant was executed: Mr. Shaffer, C.T., K.D., and Z.R. The SWAT team reported a strong chemical odor coming from inside the residence and identifiable methamphetamine-related items located in plain view once they entered the residence.

{¶13} After Agent Waddell was finished inside, Deputy Gramlich entered the residence with Deputy Berkey to collect evidence. Deputy Gramlich testified that they discovered hypodermic syringes, an orange pill grinder, a blue plastic container, pH testing strips, a receipt, a package of pseudoephedrine, a piece of foil with a pen cylinder on it, a metal spoon with residue and a cotton swab on it, a light bulb fashioned into a smoking device, a mirror with razor blades, some powder residue, another metal spoon with a cotton swab on it, a receipt for pseudoephedrine, gloves and personal protective garments, multiple lottery tickets which he testified are commonly used to create bindles for packaging narcotics, two buckets containing kitty litter, a dust mask, multiple containers and funnels, a bottle of "stripper," a Ziploc bag containing rolled up coffee filters, a Ziploc bag containing a saturated towel, a Ziploc bag containing a white residue, a container with some type of salt in it, a trash can containing "what appeared to be meth trash, coffee filters, bottles, things of that nature[,]" a blue bucket containing multiple "cooking vessels" in it, a bucket of salt, clear tubing, a bucket of kitty litter, multiple

plastic bottles with the labels removed, and a receipt for acetone. He also found metal fittings and a Tennessee driver's license for L.D. inside of K.D.'s purse. L.D.'s name and license number had been associated with recent pseudoephedrine purchases linked to 636 Sherwood Drive.

{¶14} BCI testing revealed trace amounts of methamphetamine on the spoon with cotton swab and residue, trace amounts of pseudoephedrine on the pill grinder, and trace amount of methamphetamine in the blue container.

{¶15} Deputy Gramlich spoke to Mr. Shaffer while he was in a police cruiser at the scene. Deputy Gramlich testified that he read Mr. Shaffer his rights and that Mr. Shaffer indicated he understood those rights and agreed to speak to the deputy. Mr. Shaffer told the deputy that C.T. cooked methamphetamine in the residence and "on at least one occasion he had purchased a box of pseudoephedrine for [C.T.] for that purpose." Mr. Shaffer told the deputy "[h]e believed that there may be a plate inside the home that [C.T.] had used for drying the methamphetamine on[,]" but he was not sure. He also told the deputy that he was at the residence "hanging out" with Z.R. and that he had used methamphetamine inside of the residence.

{¶16} Deputy Gramlich's body camera recorded video of his conversation with Mr. Shaffer in the police cruiser, which was entered into evidence at trial. The body camera video corroborates the deputy's testimony. In the video, Mr. Shaffer admits to buying one "box" for C.T. Deputy Gramlich testified that the terms "box" or "boxes" are commonly used to refer to pseudoephedrine blister pack boxes. Mr. Shaffer admits in the video that while at the residence, he "got high a little bit." When asked if he has seen C.T. "cooking off bottles or drying the stuff[,]" Mr. Shaffer responds, "No, I don't, I don't, actually yeah, I've seen drying plates in the

kitchen." When questioned further about the use of the plates, the location of C.T.'s "stuff," and how he obtains "it" from C.T., Mr. Shaffer responds, "I don't think I, I don't even care about the shit. I don't fucking cook it and I don't like it. I know they cook it * * *." The deputy inquires as to what type of pseudoephedrine box Mr. Shaffer purchased, and Mr. Shaffer appears unsure of which type he purchased. As the deputy questions Mr. Shaffer further regarding his pseudoephedrine purchase, he asks, "Did he drive you up there * * *?" Mr. Shaffer responds, "No, she's been driving me for it * * *." The deputy asks where L.D. is at and Mr. Shaffer responds, "I don't know who that is."

{¶17} Deputy Gramlich spoke to Mr. Shaffer again at the Wayne County Jail. The deputy's body camera recorded video of the conversation, which was entered into evidence at trial. In the video, the deputy reads Mr. Shaffer a copy of the search warrant and briefly explains the illegal assembly charge. He informs Mr. Shaffer that he knows Mr. Shaffer has purchased boxes for "them" at least twice. Mr. Shaffer then admits to the deputy that "[he] tried to get one Thursday and [he] got one the other night."

{¶18} Ohio law prohibits individuals without a valid prescription for pseudoephedrine from purchasing "[t]hree and six tenths grams within a period of a single day [or n]ine grams within a period of thirty consecutive days." R.C. 2925.56(A)(1). The National Precursor Log Exchange ("NPLEx") is an "electronic system for tracking sales of pseudoephedrine products and ephedrine products on a national basis * * *." R.C. 3715.05(A)(6). The NPLEx system will notify a retailer or distributor with a "stop-sale alert" to block any attempted purchase of pseudoephedrine if completion of the sale would violate the purchase limits set forth in R.C. 2925.56(A)(1) or federal law. R.C. 3715.05(A)(13); R.C. 3715.052(B)(1). Deputy Gramlich testified as to his review and investigation of the NPLEx reports detailing the successful

purchases and attempted or blocked purchases made by Mr. Shaffer, C.T., K.D., and L.D. Those four NPLEx reports, which corroborate the deputy's testimony as to their contents, were all entered into evidence at trial.

{¶19} The NPLEx reports indicate that, on June 22, 2016, Mr. Shaffer attempted to buy pseudoephedrine at the Wooster Walmart at 9:51 A.M., but the purchase was blocked. Six minutes later, at 9:57 A.M., C.T. purchased pseudoephedrine at the same store. Five minutes later, at 10:02 A.M., K.D. attempted to purchase pseudoephedrine at the same store, but the purchase was blocked. Six minutes later, at 10:08 A.M., someone using L.D.'s identification attempted to purchase pseudoephedrine at the same store, but the purchase was blocked. Deputy Gramlich testified that it was later determined Z.R. had attempted to use L.D.'s identification for that purchase.

{¶20} The NPLEx reports also indicate that, on June 24, 2016, Mr. Shaffer purchased pseudoephedrine at the Massillon Rite Aid at 8:21 P.M. Nine minutes later, at 8:30 P.M., someone using L.D.'s identification purchased pseudoephedrine at the same store. Thirty-six minutes later, at 9:06 P.M., K.D. purchased pseudoephedrine at the Orrville Rite Aid. Six minutes later, at 9:12 P.M., C.T. attempted to purchase pseudoephedrine at the same store, but the purchase was blocked.

{¶21} As to Mr. Shaffer's sufficiency arguments, we first note that he erroneously refers to his indictment as alleging he committed this offense "on June 25, 2016." The indictment actually alleges that Mr. Shaffer committed this crime "*on or about* June 25, 2016." (Emphasis added.) This Court disagrees with Mr. Shaffer's series of related arguments that no evidence was presented to: (1) prove that he assembled or possessed any of the methamphetamine-related supplies discovered at the residence; (2) prove that he provided any of the supplies to C.T. for

the manufacture of methamphetamine; or (3) link his purchase of pseudoephedrine on June 24, 2016, to the pseudoephedrine that was discovered in the residence on June 25, 2016. Deputy Gramlich testified, and his body camera video confirmed, that Mr. Shaffer admitted to buying one box of pseudoephedrine for C.T., admitted that he knew the others cooked methamphetamine, had observed some drying plates in the kitchen, and admitted to getting high in the residence. In the deputy's body camera video from the interview at the Wayne County Jail, Mr. Shaffer admits that he unsuccessfully attempted to purchase a box of pseudoephedrine on Thursday, but was successful in purchasing a box of pseudoephedrine on another night. Mr. Shaffer's NPLEx report indicates that he unsuccessfully attempted to buy pseudoephedrine at the Wooster Walmart on June 22, 2016, but successfully purchased a 40-count box of Rite Aid Ibuprofen Cold & Sinus containing pseudoephedrine at the Massillon Rite Aid on June 24, 2016. The search warrant was executed the very next day on June 25, 2016, and Agent Waddell testified that he found an empty 40-count box of pseudoephedrine inside of the kitchen trash can along with an overwhelming amount of items related to the manufacture of methamphetamine. The NPLEx reports further indicate that the individuals who were present when the search warrant was executed, including Mr. Shaffer, had very recently been purchasing or attempting to purchase pseudoephedrine products in the same stores, on the same days, and around the same times.

{¶22} We also disagree with Mr. Shaffer's argument that his case is analogous to the *Morlock* case and instead conclude that *Morlock* is distinguishable from the instant case. In *Morlock*, this Court refrained from concluding that Mr. Morlock's actions performed two weeks prior to October 28, 2012, were committed "on or about October 28, 2012[,]" as stated in the indictment. *See Morlock*, 2014-Ohio-4458, at ¶ 26. Here, Mr. Shaffer admitted to buying

pseudoephedrine for C.T. and his NPLEx report confirmed the purchase as being made on June 24, 2016, only one day prior to the execution of the search warrant, which is sufficient to satisfy the indictment's "on or about June 25, 2016" language. *See State v. Forney*, 9th Dist. Summit No. 24361, 2009-Ohio-2999, ¶ 10 (stating "[t]he State is only required to prove that the offense occurred reasonably near the date specified in the indictment" in a case where the indictment alleged the offense took place "on or about" a particular date.). In *Morlock*, no evidence was presented that Mr. Morlock assembled or possessed the particular chemicals found at the residence on October 28, 2012. *Id.* at ¶ 27. However, in the case sub judice, Mr. Shaffer admitted to recently buying pseudoephedrine for C.T., whom he knew was manufacturing methamphetamine. Mr. Shaffer purchased a 40-count box of a pseudoephedrine product on June 24, 2016, and testimony at trial established that an empty 40-count box of pseudoephedrine was found inside of the kitchen trash can among other methamphetamine-related items on June 25, 2016. Thus, we cannot conclude that the fact pattern in *Morlock* is comparable to the fact pattern in Mr. Shaffer's case.

{¶23} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, from which a rational trier of fact could have concluded that, on or about June 25, 2016, Mr. Shaffer knowingly assembled or possessed pseudoephedrine pills with the intent to manufacture methamphetamine.

{¶24} Mr. Shaffer's sole assignment of error is overruled.

III.

{¶25} Mr. Shaffer's sole assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

MATTHEW J. MALONE, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.