[Cite as *State v. Dunlap*, 2018-Ohio-3525.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 17CA0063-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALISA DUNLAP | | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 16 CRB 01261 |

DECISION AND JOURNAL ENTRY

Dated: September 4, 2018

TEODOSIO, Judge.

{¶1} Appellant, Alisa Dunlap, appeals from her disorderly conduct convictions in the Medina Municipal Court. This Court affirms.

I.

{¶2} Ms. Dunlap, her three daughters, and their dog entered a Motel 6 in Medina, purportedly with an interest in renting a room for the night. Ms. Dunlap asked the clerk ("A.S.") if she could see a room before she decided whether to rent it. She provided her driver's license to A.S., and the clerk made her a card key for a nearby room. After a couple minutes, A.S. and a resident of the motel ("R.A.") went to check on Ms. Dunlap and her family because they had not returned. One of Ms. Dunlap's daughters was using the bathroom in the motel room, so A.S. informed Ms. Dunlap that she now had to purchase the room, pursuant to motel policy. A heated, verbal argument ensued and A.S. eventually told Ms. Dunlap to leave. The argument continued as the parties moved from the motel room back to the front lobby. While A.S. was

back behind the front desk, holding Ms. Dunlap's license, and attempting to call the police, Ms. Dunlap climbed up onto the counter and lunged at A.S., grabbing her license back and knocking over a computer monitor. R.A. attempted to get Ms. Dunlap down off of the counter, so she repeatedly hit him in the head and face before exiting the motel. Both A.S. and Ms. Dunlap called the police.

{¶3} Ms. Dunlap was charged with three counts of disorderly conduct, two of which involved recklessly causing inconvenience, annoyance, or alarm to A.S. and R.A. by engaging in fighting, in threatening harm, or in violent or turbulent behavior, under R.C. 2917.11(A)(1). The third count involved recklessly causing inconvenience, annoyance, or alarm to A.S. and R.A. by making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to A.S. and R.A., under R.C. 2917.11(A)(2).

{¶4} Ms. Dunlap represented herself in a bench trial before a magistrate. She was convicted of all three counts of disorderly conduct and was ordered to pay fines and costs. Ms. Dunlap filed objections to the magistrate's decision. The trial court rejected the magistrate's decision as to the R.C. 2917.11(A)(2) count, found Ms. Dunlap not guilty of that count, and vacated the fines and costs associated with it. The court found the magistrate's decision as to the two R.C. 2917.11(A)(1) counts to be supported by the evidence and overruled Ms. Dunlap's objections.

{¶5} Ms. Dunlap appealed her convictions, but this Court dismissed the appeal for lack of jurisdiction because the trial court had not yet issued a final judgment of conviction. *See State v. Dunlap*, 9th Dist. Medina No. 17CA0026-M (July 17, 2017). The trial court then issued an amended judgment entry adopting the magistrate's decision as to the two R.C. 2917.11(A)(1)

counts, finding Ms. Dunlap guilty of those counts, and sentencing her to fines and costs. The court also rejected the magistrate's decision as to the R.C. 2917.11(A)(2) count, found Ms. Dunlap not guilty of that count, and vacated the fines and costs associated with it.

{¶6} Ms. Dunlap now appeals from her convictions and raises nine assignments of error for this Court's review.

{¶7} For ease of analysis, we will consolidate some of her assignments of error.

II.

## ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] IN DENYING APPELLANT'S MOTION FOR ACQUITTAL ON THE TWO DISORDERLY CONDUCT CHARGES WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AS TO EACH MATERIAL ELEMENT TO SUSTAIN A CONVICTION OF THE CRIME CHARGED.

{¶8} In her first assignment of error, Ms. Dunlap argues that her convictions are not supported by sufficient evidence. We disagree.

{¶9} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶10} Ms. Dunlap argues that the State failed to present sufficient evidence of each element of disorderly conduct. She claims her actions were not reckless because A.S. was hateful and racist toward her, and Ms. Dunlap was therefore worried and afraid A.S. would do something to her and her family, so she nervously jumped onto the counter. She also claims that A.S., not Ms. Dunlap, engaged in fighting, or violent and turbulent behavior, because A.S. was wrongfully withholding the license and, instead of just letting go when Ms. Dunlap grabbed the license, A.S. pulled it back "as if she were in a tug of war game[,]" causing Ms. Dunlap to knock over the computer monitor. She further contends that striking R.A. several times in the head and face did not constitute fighting or violent and turbulent behavior, because R.A. grabbed her wrist first and Ms. Dunlap was only trying to free herself. She further argues that A.S., not Ms. Dunlap, caused annoyance, inconvenience, or alarm by taunting Ms. Dunlap and refusing to return her license; and R.A., not Ms. Dunlap, caused annoyance, inconvenience, or alarm by initiating the physical confrontation.

{¶11} We note that the majority of Ms. Dunlap's arguments under this assignment of error essentially blame the victims for her own conduct and therefore sound more in weight, not sufficiency. "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. Because Ms. Dunlap's stated assignment of error presents this Court with strictly a sufficiency challenge and she does in fact initially argue that the State failed to present sufficient evidence of each element of disorderly conduct, we will address that

particular argument alone under the appropriate standard of review, and we decline to address the multitude of arguments claiming the victims were at fault for Ms. Dunlap's conduct.

{¶12} Ms. Dunlap was convicted of two counts of disorderly conduct under R.C. 2917.11(A)(1), which states: "No person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior * * *." Pursuant to R.C. 2901.22(C):

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

"The Supreme Court has defined turbulent behavior as 'tumultuous behavior or unruly conduct characterized by violent disturbance or commotion.'" *State v. Graham*, 9th Dist. Wayne No. 98 CA 0007, 1998 Ohio App. LEXIS 6116, *7 (Dec. 16, 1998), quoting *State v. Reeder*, 18 Ohio St.3d 25, 27 (1985).

{¶13} At trial, the State presented video surveillance footage of the incident along with the victims' testimony and the testimony of a police officer. A.S. testified that she went to check on Ms. Dunlap after several minutes because she had not returned. R.A. happened to be in the lobby and offered to go with her. R.A. testified that when A.S. opened the door to the motel room, "the folks that were ostensibly looking at the room were just hanging out, talking * * *." A.S. testified that Ms. Dunlap said one of the children was using the bathroom. A.S. then told Ms. Dunlap that she would now have to pay for the room because, pursuant to Motel 6 policy, "if you use the bathroom, you bought the room." According to A.S., Ms. Dunlap became very aggressive and said, "F**k you, bitch." R.A. also testified that Ms. Dunlap said, "F**k you" in a loud and threatening manner. R.A. testified that he placed himself in between the two women

because he was concerned Ms. Dunlap would "start[] getting physical in addition to vocal." A.S. testified that Ms. Dunlap became increasingly aggressive and repeatedly said, "F**k you," so A.S. told her to "get the hell out."

{¶14} A.S. retreated back behind the front desk in the lobby, retrieved Ms. Dunlap's license, and attempted to call the police. A.S. testified that Ms. Dunlap screamed, "Give me back my driver's license, you f*****g bitch" and continued to swear by saying, "F**k you, you fat b***h." Ms. Dunlap then climbed up onto the counter and grabbed her license out of A.S.' hand. R.A. testified that Ms. Dunlap's demeanor at the counter was now "[b]asically the same, except it was obviously more threatening" than back in the motel room. A.S. testified that when Ms. Dunlap came across the counter and grabbed at her:

> I was scared to death of her. I mean, she's bigger than I am, she's threatening, she's - - I did not know if this woman was coming to hit me. She's attempting to grab me. I have no idea what her intentions are. She's swearing at me, screaming at me. I'm telling her to get off the counter. [She knocked stuff over on the counter.] I mean, she's clearly out of control. * * * I was scared this woman was going to beat me up. * * * [She] scared the crap out of me.

A.S. further testified that when Ms. Dunlap grabbed at her, she pulled her hand so hard that she bent the metal clip attached to the maid's key that A.S. was holding. She testified that R.A. tried to get Ms. Dunlap off of the counter, but Ms. Dunlap "started to pound him * * *" and "hit [him] in the head four times with her cell phone." R.A. also testified that Ms. Dunlap hit him a couple times with her phone. A.S. immediately called the police from her cell phone once Ms. Dunlap exited the motel.

{¶15} Officer Hallie Beardsworth of the Medina Township Police Department testified that when she arrived at the scene A.S. was flustered and upset. A.S. and R.A. recounted their versions of the incident to the officer, which the officer testified included Ms. Dunlap allegedly

saying, "F**k you, c**t. You're a fat b***h." The officer testified that R.A. had visible injuries to his face, which were fairly and accurately represented in the pictures introduced at trial.

{¶16} Pictures of multiple injuries to R.A.'s face as well as surveillance videos of the incident were entered into evidence. The videos contain no audio, but otherwise corroborate the victims' testimony as to Ms. Dunlap's conduct at the front desk. A.S. can be seen calmly walking behind the front desk, picking up Ms. Dunlap's license, and trying to make a phone call. Ms. Dunlap leans over the counter and begins to look all around, apparently searching for her license somewhere on the other side. Once she appears to realize A.S. is now holding the license, Ms. Dunlap can be seen crawling up onto the counter and lunging toward A.S. She grabs A.S. by the hand or wrist and manages to briefly grab part of A.S.' shirt. As A.S. recoils backward, Ms. Dunlap holds on for a brief struggle and simultaneously knocks over the computer monitor on the desk behind the counter. R.A. grabs Ms. Dunlap by the arm in an apparent attempt to pull her back down off of the counter. Ms. Dunlap immediately turns around to confront R.A. and hits him in the face. She then grabs a hold of his hair while the two struggle. Ms. Dunlap proceeds to hit R.A. in the face three more times before retreating out the motel's front door. Her children follow her outside and she slams the door closed.

{¶17} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, that Ms. Dunlap's conduct constituted disorderly conduct. We further conclude that any rational trier of fact could have found all of the essential elements of disorderly conduct proven beyond a reasonable doubt. The testimony of the victims, along with pictures and video surveillance of the incident, demonstrated that Ms. Dunlap recklessly engaged in violent or turbulent behavior. She engaged in tumultuous behavior and unruly conduct by

spontaneously crawling up onto the counter, acting with heedless indifference to the potential consequences of her actions and disregarding the substantial and unjustifiable risk of injury she posed to herself and others. Her decision to then lunge at A.S.—grabbing the clerk and briefly struggling over the driver's license—while knocking over a computer monitor and bending a metal clip in A.S.'s hand, certainly could be characterized as another violent disturbance or commotion. Ms. Dunlap escalated the violence even further by then physically attacking R.A., grabbing his hair, and striking him in the head several times, causing multiple facial injuries. Ms. Dunlap's actions surely could be said to have caused inconvenience, annoyance, or alarm to the two victims. We conclude that Ms. Dunlap's sufficiency argument is without merit.

{¶18} Accordingly, Ms. Dunlap's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT GRANTING APPELLANT'S RULE 29 MOTION FOR ACQUITTAL BASED ON COMPLETE DEFENSES OF SELF-DEFENSE, DEFENSE OF OTHERS, DEFENSE OF PROPERTY, AND LEGAL SUFFICIENCY IN BOTH COUNTS OF DISORDERLY CONDUCT.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED BY DENYING APPELLANT'S RULE 29 MOTION BASED ON SELECTIVE PROSECUTION, AND PROSECUTORIAL MISCONDUCT.

{¶19} In her second and third assignments of error, Ms. Dunlap argues that the trial court erred in in denying her Crim.R. 29 motion for acquittal despite several affirmative defenses, selective prosecution, and prosecutorial misconduct. We disagree.

{¶20} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *See State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. As we have already concluded above that Ms. Dunlap's

convictions are based on sufficient evidence, we decline to further address the matter ad nauseam. Moreover, Ms. Dunlap never explicitly argued or attempted to establish any of the elements of self-defense, defense of others, or defense of property at trial. Even assuming arguendo that she had, the burden of proof for an affirmative defense is on the defendant, and thus "[t]he sufficiency-of-the-evidence standard is inapplicable when reviewing an affirmative defense * * *." *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 16. Ms. Dunlap also never raised the issue of prosecutorial misconduct at the trial court level. *See State v. Warrington*, 9th Dist. Medina No. 14CA0080-M, 2016-Ohio-244, ¶ 13 ("[W]hen a defendant fails to object to alleged prosecutorial misconduct, the defendant forfeits all argument except that of plain error."). While she did make an oral motion to dismiss prior to the start of trial based on selective prosecution, the trial court denied the motion and Ms. Dunlap did not later address selective prosecution in her Crim.R. 29 motion for acquittal.

{¶21} Ms. Dunlap's second and third assignments of error are overruled.

## ASSIGNMENT OF ERROR FOUR

CONVICTIONS ON EITHER OF THE 2 DISORDERLY CONDUCT COUNTS
ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} In her fourth assignment of error, Ms. Dunlap argues that her convictions are against the manifest weight of the evidence. We disagree.

{¶23} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶24}** Ms. Dunlap argues that the testimony provided by State witnesses was not credible, but the testimony provided by defense witnesses was credible. She contends that the magistrate and trial court "merely had to watch the [c]amera to be able to see that the State's testimony wasn't credible, and that the Appellant's testimony was." Ms. Dunlap claims that multiple discrepancies exist between State witness testimony and the video surveillance footage, specifically as to the conduct of A.S. and R.A. She makes various claims of inconsistencies such as: (1) A.S. "burst" into the motel room after only waiting one minute, not several minutes, (2) A.S. was clearly the aggressor throughout the incident, and (3) the State presented false testimony that Ms. Dunlap hit R.A. several times, when she actually only hit him once.

**{¶25}** After a careful review of the record, we cannot say that the guilty verdicts in this case are against the manifest weight of the evidence. The trial court was presented with testimony from several individuals, including Ms. Dunlap, her three children, both victims, and a police officer. Video surveillance footage of the incident from multiple angles was also introduced into evidence at trial. "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one

of the syllabus. In resolving any conflicts in testimony presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness. *See Haydon* at ¶ 28. The trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13. After reviewing the record and all of the evidence, including the testimony and video surveillance footage, we cannot conclude that the trial court, in resolving any purported conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Ms. Dunlap has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in her favor and against conviction. *See Thompkins* at 387.

{¶26} Ms. Dunlap's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR FIVE

TRIAL COURT ERRED BY SUBSTITUTING INADEQUATE AUDIO/VISUAL EQUIPMENT THAT PREJUDICED APPELLANT'S TRIAL. * * *.

### ASSIGNMENT OF ERROR SIX

TRIAL COURT FAILED TO CONTINUE TRIAL WHEN APPELLANT TESTIFIED THAT SUBPOENAED WITNESSES DIDN'T SHOW UP AND PROVIDE DOCUMENTS.

### ASSIGNMENT OF ERROR SEVEN

THE STATE'S WITNESS FAILED TO COMPLY WITH SUBPOENA BY PROVIDING ENTIRE DISCOVERY: SPECIFICALLY, INITIAL MINUTES OF OFFICERS' BODY CAM, FULL DASH CAM VIDEO, AND INFORMATION FROM THE MONTVILLE POLICE OFFICER ON SITE.

**ASSIGNMENT OF ERROR EIGHT**

THE TRIAL COURT ERRED BY FAILING TO ALLOW APPELLANT TO ENTER OFFICER BEARDSWORTH'S BODY CAM VIDEO INTO EVIDENCE, DESPITE THE APPELLANT'S REFERENCING IT TO QUESTION OFFICER BEARDSWORTH DURING TRIAL.

**ASSIGNMENT OF ERROR NINE**

THE TRIAL COURT ERRED BY SUSTAINING THE PROSECUTOR'S OBJECTIONS AND NOT ALLOWING APPELLANT TO ADEQUATELY QUESTION HER 3 WITNESSES.

{¶27} In her fifth assignment of error, Ms. Dunlap argues that the trial court erred in using a laptop and small screen to view the surveillance videos during trial. In her sixth, seventh, and eighth assignments of error, she claims that subpoenaed witnesses failed to appear at trial and failed to provide evidence, and the trial court erred in not continuing the trial and erred in not entering a body cam video into evidence. In her ninth assignment of error, she claims the trial court erred in sustaining the prosecutor's objections to her questions.

{¶28} We are cognizant of the fact that Ms. Dunlap proceeded with both her trial and her appeal pro se. As to pro se litigants, this Court has previously stated:

> [P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that [s]he remains subject to the same rules and procedures to which represented litigants are bound. [Sh]e is not given greater rights than represented parties, and must bear the consequences of h[er] mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

*State v. Goldshtein*, 9th Dist. Summit No. 25700, 2012-Ohio-246, ¶ 6, quoting *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3.

{¶29} Nowhere in these five assignments of error does Ms. Dunlap cite to the record, and apart from a single passing mention of R.C. 2705.02 she fails to cite any legal authority

supporting her claims. *See* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). *See also* App.R. 16(D); Loc.R. 7(F). R.C. 2705.02 addresses acts in contempt of court, but Ms. Dunlap never relied on this statute at trial, nor did she request any subpoenaed witnesses to be held in contempt for failure to appear and testify at trial. In several of these assignments of error, she also fails to set forth any meaningful argument in support of her claims, offering instead mere conclusory statements without any legal or evidentiary support. "As we have repeatedly written, it is not the duty of this Court to scour the record for evidence and construct an argument on an appellant's behalf." *In re E.G.*, 9th Dist. Medina No. 16CA0075-M, 2017-Ohio-2584, ¶ 27. *See also Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out"). Pursuant to App.R. 12(A)(2), this Court may disregard an assignment of error if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). We therefore decline to address these five assignments of error due to Ms. Dunlap's failure to abide by the rules of appellate procedure.

{¶30} Accordingly, Ms. Dunlap's fifth, sixth, seventh, eighth, and ninth assignments of error are overruled.

III.

{¶31} All of Ms. Dunlap's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

ALISA DUNLAP, pro se, Appellant.

J. MATTHEW LANIER, Prosecuting Attorney, for Appellee.