[Cite as *State v. Taylor*, 2020-Ohio-3159.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 29230 |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| TONY TAYLOR | AKRON MUNICIPAL COURT |
| | COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 18CRB07639 |

## DECISION AND JOURNAL ENTRY

Dated: June 3, 2020

SCHAFER, Judge.

{¶1} Defendant-Appellant, Tony Taylor, appeals his conviction in the Akron Municipal Court for disorderly conduct. For the reasons that follow, we reverse Mr. Taylor's conviction.

I.

{¶2} In August 2018, Mr. Taylor was involved in a verbal confrontation with Officer Ross of the Akron Police Department after Mr. Taylor improperly entered the drop area of a fireworks perimeter. Mr. Taylor was subsequently arrested and charged with disorderly conduct in violation of Akron City Code 132.01(A)(1), a minor misdemeanor; misrepresenting identity in violation of Akron City Cody 136.15, a misdemeanor of the second degree; and obstructing official business in violation of Akron City Code 136.11, a misdemeanor of the second degree. Mr. Taylor entered a plea of not guilty and the matter proceeded through the pretrial process.

{¶3} Prior to trial, the State dismissed the misrepresenting identity charge and the obstructing official business charge. Following a bench trial, the court found Mr. Taylor guilty of

disorderly conduct, and imposed sentence. Upon Mr. Taylor's motion, the trial court stayed his sentence.

{¶4} Mr. Taylor filed this timely appeal, raising two assignments of error for our review.

II.

## Assignment of Error I

**The trial court committed reversible error when it denied Defendant-Appellant Taylor's motion for judgment of acquittal under [Crim.R. 29].**

{¶5} In his first assignment of error, Mr. Taylor contends that there was insufficient evidence to convict him of disorderly conduct, and that trial court erred when it denied his motion for judgment of acquittal pursuant to Crim.R. 29.

{¶6} Although Mr. Taylor's stated assignment of error is that the trial court erred in when it denied his Crim.R. 29 motion, Mr. Taylor also argues within the body of the assignment of error that his conviction is against the manifest weight of the evidence. Because Mr. Taylor's arguments do not comply with the App.R. 16(A)(7) requirement that assignments of error be argued separately, the States asserts that we should disregard his manifest weight argument pursuant to App.R. 12(A)(2) and Loc.R. 7(B)(7). However, because we conclude that the State failed to present sufficient evidence to prove beyond a reasonable doubt that Mr. Taylor was guilty of disorderly conduct, we need not consider the manifest weight argument.

## Sufficiency of the Evidence

{¶7} This Court reviews the denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence. *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶8} The trial court found Mr. Taylor guilty of disorderly conduct in violation of Akron City Code 132.01(A)(1), which is identical in language to R.C. 2917.11. That ordinance provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by * * * [e]ngaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior[.]"

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that the circumstances are likely to exist.

Akron City Code 130.08(C). *See* R.C. 2901.22(C).

{¶9} In this case, the trial court specifically found that Mr. Taylor "screamed profanities at Officer Ross in a threatening manner" and that Mr. Taylor's behavior towards Officer Ross "was both threatening and turbulent." On appeal, Taylor does not assert that there was insufficient evidence to establish that he recklessly caused inconvenience, annoyance, or alarm to another, and instead, only asserts that the State failed to produce sufficient evidence that his behavior was violent or turbulent. Although Mr. Taylor does not develop a significant argument related to the trial court's finding that his behavior was threatening in addition to being turbulent, he does assert that there were "no statements alleging that [he] engaged in fighting nor threatened harm to persons or property to validate a conviction for [d]isorderly [c]onduct."

{¶10} At trial, the State presented the first two minutes and nine seconds of Officer Ross's body camera footage as well as testimony from Officer Ross. Officer Ross testified during direct examination as follows. Officer Ross was assigned to work a traffic detail in the fireworks perimeter at the rear of a local minor league baseball stadium at the time of the incident at issue. The area had been cordoned off by fire department fire inspectors to restrict the public from entering the "drop zone" of the fireworks scheduled at the stadium that evening. Officer Ross testified that he observed Mr. Taylor walk along a galvanized rail, pick up the tape designating the restricted area, and enter the drop zone. At that point he began yelling at Mr. Taylor to stop, and directing him to go back. Officer Ross approached Mr. Taylor and stated that Mr. Taylor "was immediately verbally abusive," and when informed he was not allowed in the area, Mr. Taylor stated "that he could get his property."

{¶11} Officer Ross further testified that people enter restricted areas "like that" from "time to time[,]" and he "needed to talk to [Mr. Taylor as to] why he entered that area." Officer Ross indicated that people who enter the restricted area usually exit the restricted area immediately after being instructed to leave. He stated that he still tries to talk to those individuals to explain why they are not allowed in the area, but "[t]hat didn't happen here." When specifically asked by the prosecutor to characterize Mr. Taylor's behavior during the interaction, Officer Ross stated: "He was verbally abusive. He was not going to assist us in any part of this. He was going to be completely unhelpful to his own situation or ours."

{¶12} A review of Officer Ross's body-camera footage sheds further light on what occurred during the confrontation between Mr. Taylor and Officer Ross. The first twenty-nine seconds of the recording do not have sound. In the recording, Mr. Taylor can be seen walking along a railing until he comes upon a yellow tape at the end of the railing, presumably indicating

the beginning of the fireworks drop zone.  Mr. Taylor then ducks under the tape, and begins walking back along the railing in the same direction from which he came, but on the opposite side of the railing.  Officer Ross can be seen gesturing to Mr. Taylor and pointing back in the direction of the yellow tape.  Mr. Taylor appears to acknowledge that Officer Ross is attempting to communicate with him, but continues walking in the same direction.  Mr. Taylor can then be seen picking up an object and beginning to walk back in the direction of Officer Ross and the yellow tape.  The recording indicates that less than fifteen seconds elapsed between Mr. Taylor entering the restricted area, retrieving an item from the ground, and turning back in the direction from which he came.

{¶13}  As Mr. Taylor begins to walk back toward the tape, the sound begins on the body-camera footage.  Mr. Taylor can be heard asking Officer Ross "Why you bein' mean?"  To which, Officer Ross replied, "Because you just went where you were not supposed be."  Mr. Taylor attempts to interrupt Officer Ross, and begins to speak over Officer Ross's statement at the words "were not," and stating that he had to get his "[g]oddamn comb."  At that point Officer Ross steps into Mr. Taylor's path, blocking his exit from the restricted area.  Officer Ross then forces Mr. Taylor to stop walking by placing his hand on Mr. Taylor's upper arm and pushing him back firmly.  As he pushes on Mr. Taylor's arm, Officer Ross demands to see Mr. Taylor's identification.  Mr. Taylor steps back from Officer Ross and states, "I ain't got an I.D."  During the above exchange, Officer Ross's tone of voice seems firm and authoritative, and Mr. Taylor's tone of voice seems irritated.  It appears from the angle of the body-camera footage that Officer Ross is standing in a slightly elevated position from that of Mr. Taylor.

{¶14}  After Mr. Taylor tells Officer Ross he does not have an I.D., Officer Ross tells Mr. Taylor, "We're going to find out who you are."  Mr. Taylor can then be observed to purse his lips,

look slightly to the right, place his hand on the railing and then, after looking back at Officer Ross, he exclaims in an irritated tone, "I don't give a f***k!" Officer Ross states, "Okay, that's fine," and then radios to "Mike" to "come on back" because he's "got one." While Officer Ross is radioing Mike, a woman with a confused look on her face and a child can be seen approaching the two men. As the woman appears to begin to address Officer Ross, Mr. Taylor calmly says to her, "Stop, stop, stop, * * * serious." The end of Mr. Taylor's statement is inaudible because Officer Ross then addresses Mr. Taylor again and states, "I told you not to do it and you did it anyway." Mr. Taylor reacts by stepping back, with his hand still on the railing, and exclaims in an elevated and irritated voice, "I don't give a f***k!" Mr. Taylor then removes his hand from the railing, slightly removes the comb from his hair as if showing it to show it to Officer Ross, and exclaims, "I just got my [g]oddamn comb." As Mr. Taylor places his hand back on the railing, he continues, "I ain't break no [g]oddamn laws. F***k you!"

{¶15}  Officer Ross then tells Mr. Taylor "Call me and I'll get your comb. You're not allowed back here." Mr. Taylor can be observed to react to Officer Ross's statement by turning to his right while using his right hand to give Officer Ross a dismissive wave. Mr. Taylor then gestures back to where he was observed picking up the object, and again exclaims that all he did was get his "[g]oddamn comb," and then gestures in the other direction, presumably toward the restricted area, and states, "Don't act like I just made a [g]oddamn; like I just broke the [g]oddamn law."

{¶16}  Officer Ross then radios and says, "bring a summons book, and a print pad if you think about it." Mr. Taylor, while looking away from Officer Ross, then states while shifting his feet, "Punk ass mother***r ain't got shit else to do." Mr. Taylor then says to Officer Ross, "Like you actually doing, stopping a crime. Do your f**ki*g job. All I got is my comb! I'm not over

there!" As Mr. Taylor points in the opposite direction from where he retrieved his comb, Officer Ross raises his arm toward Mr. Taylor, and says "I'm gonna warn you right now * * *." Mr. Taylor then cuts off Officer Ross's statement and asserts in a raised voice, "I can speak! I can speak! You can't stop me from speaking!" As he makes these statements, Mr. Taylor appears to move slightly back from Officer Ross. Officer Ross then says, "I'm gonna tell ya right now * * *", but does not complete his sentence because he then responds to Mr. Taylor's contemporaneous statement to the woman who had been observing the entire incident to "record this, please because * * *" by stating that he is recording the encounter. Officer Ross then states, "If you don't calm down, I'm gonna arrest you for disorderly conduct." Mr. Taylor responded by saying, "Disorderly conduct? F***k you!"

{¶17} Officer Ross calmly responded "okay," clicked his pen (presumably in preparation to write), and asked Mr. Taylor, "What is your first name?" Mr. Taylor then stated in a low, but firm voice, "I don't have to give you my name. I did not commit a crime." At that time Officer Ross told Mr. Taylor to place his arms behind his back, and that he was under arrest. Mr. Taylor complied.

{¶18} Upon review of the record, we agree with Mr. Taylor's contention that there was no evidence presented at trial to suggest that he engaged in fighting or that he engaged in threatening harm to any person or property. Officer Ross described Mr. Taylor's behavior as uncooperative and "verbally abusive," but did not describe Mr. Taylor's conduct as aggressive or menacing. Notably, when asked by the prosecutor how Mr. Taylor's "statements and vulgarity" affected him, Officer Ross implied that he had not been affected at all. Moreover, a review of the body-camera footage shows that not only did Mr. Taylor did not make any verbal threats, he also

did not make any physical movements the could have been perceived as aggressive or threatening harm to any person or property.

{¶19} Therefore, the sole question we must resolve is whether there was sufficient evidence, viewed in a light most favorable to the state, to show that Mr. Taylor's behavior was turbulent. Turbulent behavior, as defined by the Supreme Court of Ohio, is "'tumultuous behavior or unruly conduct characterized by violent disturbances or commotion.'" *State v. Dunlop*, 9th Dist. Medina No. 17CA0063-M, 2018-Ohio-3525, ¶ 12, quoting *State v. Reeder*, 18 Ohio St.3d 25, 27 (1985). "[V]ulgar language, when accompanied by aggressive behavior, can be sufficient for a disorderly conduct conviction based on 'turbulent behavior.'" *Middletown v. Carpenter*, 12th Dist. Butler No. CA2006-01-004, 2006-Ohio-3625, ¶ 17. Vulgar language alone, however, is not sufficient to support a conviction for disorderly conduct based on "turbulent behavior." *See Id.*

{¶20} The evidence presented at trial in this case does not show that Mr. Taylor's use of profane language toward Officer Ross was accompanied by any conduct characterized by violent disturbance or commotion. At no time did Officer Ross describe Mr. Taylor's conduct as violent, aggressive, or menacing. Moreover, a review of the body-camera footage shows that although Mr. Taylor's language toward Officer Ross was vulgar and insulting, and that his voice was raised much of the time, Mr. Taylor's body language and tone appear to portray irritation, frustration, and defensiveness. After Officer Ross stopped Mr. Taylor from leaving, Mr. Taylor remained standing in one spot and never approached or even gestured toward Officer Ross. Though Mr. Taylor used his hands to express himself, his gestures were not threatening.

**{¶21}** Therefore, after reviewing the record and considering the evidence in a light most favorable to the prosecution, we conclude that the state did not present sufficient evidence to prove beyond a reasonable doubt that Mr. Taylor was guilty of disorderly conduct.

**{¶22}** Mr. Taylor's first assignment of error is sustained.

### Assignment of Error II

**The trial court committed reversible error by convicting [Taylor] in violation of his rights under the First Amendment to the United States Constitution and Article I Section 11 of the Ohio Constitution[.]**

**{¶23}** In his second assignment of error, Mr. Taylor contends that the trial court erred by convicting him of disorderly conduct in violation of the First Amendment to the United States Constitution.

**{¶24}** We recognize that a person may be charged with disorderly conduct for using words that "are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace." *State v. Hoffman*, 57 Ohio St.2d 129, 133 (1979). However, Mr. Taylor was not charged with violating Akron City Code 132.01(A)(2) for "recklessly cause[ing] inconvenience, annoyance, or alarm to another by * * * [making] unreasonable noise or offensively coarse utterance, gesture, or display, or communicating unwarranted and grossly abusive language to any person[.]"). Instead, Mr. Taylor was charged with violating Akron City Code 132.01(A)(1), which focuses on a defendant's conduct rather than the content of his statements. The Supreme Court of Ohio has noted that R.C. 2917.11(A)(1), which contains identical language to Akron City Code 132.01(A)(1), "does not concern the prohibited speech-and-expression portion of the statute contained in subdivision (A)(2)[,]" which contains identical language to Akron City Code 132.01(A)(2). *Reeder*, 18 Ohio St.3d at 26.

**{¶25}** Regardless, because we determined that Mr. Taylor's conviction for disorderly conduct was not based on sufficient evidence, our resolution of Mr. Taylor's first assignment of error renders this assignment of error moot. *See* App.R. 12(A)(1)(c).

III.

**{¶26}** Mr. Taylor's first assignment of error is sustained and his second assignment of error is moot.

Judgment reversed,
and conviction vacated.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

NOAH C. MUNYER, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.